RUTH B. BUNDY *v.* THE CAPITAL NATIONAL BANK
AND TRUST COMPANY ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

310

Argued April 7th—decided May 5th, 1938.

*Robert J. Woodruff*, with whom, on the brief, was *Charles Albom*, for the appellant (plaintiff).

*Walfrid G. Lundborg*, for the appellees (defendants).

JENNINGS, J.   In this action for malicious prosecution, the plaintiff appealed from the refusal of the court to set aside the verdict for the defendants (the

bank, Eddy its president and Countryman its counsel) and from the judgment. The first appeal was not pursued. The appeal from the judgment contains no less than thirty-nine assignments of error. As in most actions of this character, the facts are involved and the legal issues rather technical. Since we find reversible error in the charge as delivered, only such of those facts and legal issues are fully discussed as are necessary to a presentation of the question involved.

The corrected finding shows that the plaintiff offered evidence and claimed to have proved the following facts: Prior to June, 1936, MacDonald and MacIntosh owned a house in East Lyme which they occupied as their home. The house was completely furnished and contained a large quantity of furniture, clothing and personal property belonging to them. On June 24th, 1936, the named defendant obtained title to the property as redeeming incumbrancer under foreclosure. On June 30th, through its agents, it broke into the house, which had been securely locked by its former owners, secured the doors and windows, except that the lock on the front door was not changed, chained the entrance gates and erected a large "no trespass" sign.

During the summer of 1936 there had been negotiations between the bank and Klein, counsel for the former owners, for a reconveyance, but terms could not be arranged. On October 10th, Eddy, president of the bank, notified Klein that it had a customer for the premises and impliedly gave permission to the former owners to remove their furniture before the 14th. He further informed him that if they did not do so the bank would remove it. Thereupon, on October 13th, the former owners took means to remove the furniture. They were driven to the premises by Hazel Shannon, plaintiff in a companion case tried at the same time.

They had procured a large moving van with four men which arrived a little later in the morning. The plaintiff and Miss Shannon were there to help with the packing. Klein was driven to the premises by Katz, a deputy sheriff of New Haven County. The parties ducked under the chain, MacIntosh unlocked the front door with a pass key and, while the parties were looking over the house, the truck backed up to the rear door. This was removed from its hinges and the truck was loaded, the process being completed about three in the afternoon.

About noon Eddy and Countryman arrived on the scene. Neither made any objection to the loading of the furniture nor did they direct anyone to leave. A state policeman and constable were present during part of the proceedings. Klein had in his possession a replevin writ and showed it to Countryman but there being no objection to the removal of the furniture the writ was not served. After the plaintiff had left, Eddy and Countryman, accompanied by the state policeman, lodged a complaint for trespass with a grand juror on which she was tried and convicted. On the trial of her appeal to the Court of Common Pleas she was acquitted.

The defendants offered evidence and claimed they had proved the following additional or contradictory facts: The premises were vacated by the former owners about one year prior to October, 1936. The bank made no claim to any of the personal property in the house and did not know to whom it belonged. The bank took possession of the premises on June 28th, 1936, and secured all entrances. The entry by the former owners was by forcing the French doors and removing a door from its hinges. Klein had been notified that the personal property could only be removed by replevin, since the bank required this pro-

tection. The arrest of the plaintiff was on probable cause, without malice, on information furnished by the defendants, the independent investigation of the grand juror and advice of counsel.

The plaintiff was prosecuted under § 6119 of the General Statutes, which reads as follows: "TRESPASS. Any person who shall, without right, enter or remain upon the premises of another after having been forbidden to do so by the owner of such premises or his authorized agent, either directly or by clear and legible signs posted thereon, shall be fined not more than fifty dollars." One of the numerous issues presented to the jury arose out of the claim of the plaintiff that she was not on the property "without right" but that, on the contrary, the property was being removed in the presence of and without any objection by the defendants after they had given implied permission so to do, and the opposing claim of the defendants that permission was refused unless the former owners proceeded under replevin. The plaintiff asserts that the treatment in the charge of her contention in this regard was tantamount to a directed verdict for the defendants. The court, in discussing this claim, told the jury that the former owners could get possession of their property in one of three ways "and one was by consent of the bank; and the bank refused its consent, according to the evidence in the case, because" etc.; "In some way or another, they could take out that property by permission, which was denied them"; again "I have told you that MacDonald and MacIntosh were out of possession; that the bank was in possession; it was exercising dominion and control over the property; it was doing so in a lawful manner; that it was entitled to possession and that it had a right to exclude others from coming on the property. When one went under the chains across this entrance, or

opened those entrances, they came upon this property in violation of the statute." The court then asked this rhetorical question, "I might go further and say: Supposing the evidence was presented to you, gentlemen, trying the case, the original case, under which these people were prosecuted and the evidence was presented that was presented here,—would there be a doubt in the minds of any of you gentlemen whether or not that statute was violated by the plaintiffs?" In closing the discussion the court said, "Now, gentlemen, upon this question of the existence of probable cause, I express my opinion upon that fact, but you are not to be influenced by that opinion without it coincides with your opinion; and in my opinion probable cause existed here to justify Mr. Eddy and Mr. Countryman in everything they did. You are not bound by this expression of my opinion since it is a question of fact; it is for you to determine and you will determine it according to your conscience regardless of what I say about it."

In the last statement quoted the court attempted to leave the question to the jury as one of fact. The repeated assertions in those portions of the charge previously quoted, without any reference to the claims of the plaintiff, that permission had been refused and that when the plaintiff entered the property she violated the statute destroyed the effectiveness of this statement. Our rule that the court may and often should express its opinion on the facts is well settled and salutary. *Aldrich* v. *Duggan,* 107 Conn. 17, 21, 139 Atl. 270; *Schiesel* v. *Poli Realty Co.,* 108 Conn. 115, 124, 142 Atl. 812; *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 Atl. 594. It should not, however, indulge in an argumentative presentation of the claims of one side. *Tuckel* v. *Hartford,* 118 Conn. 334, 337, 172 Atl. 222. The fact that the jury were told that it was their duty

to recall the evidence will not save such a charge. *Tuckel* v. *Hartford*, supra.

If, as the plaintiff claimed, she was on the property with the consent of the defendants previously given and without objection by them there present, that would be a complete vindication of her presence there and the issue should not have been practically withdrawn from the consideration of the jury. The treatment of this claim by the court went beyond the bounds of judicial discretion and was prejudicial. In this there was error.

The charge was erroneous in another respect. In making the statement to the jury previously quoted, "In some way or another, they could take out that property by permission, which was denied them," the court assumed lack of consent by the bank although on the finding it was a contested fact. *Ezzo* v. *Geremiah*, 107 Conn. 670, 675, 142 Atl. 461; 14 R. C. L. 731. The situation was not helped by what immediately followed, "they could take it out by legal process—a writ of replevin properly issued and properly served, and they would be protected in resorting to the law for obtaining possession of their property, if they wanted to; or they could take another course and go without permission and without authority of the law and take their chances in the way in which they took it." This was open to the same objection. The jury were told in effect that in taking the property as they did, they did so at the risk of prosecution. *Hancock Co., Inc.* v. *Poli Corp.*, 113 Conn. 545, 552, 155 Atl. 914.

But two of the remaining assignments of error require notice in view of the possibility of a retrial. Both parties, under their claims of proof, asserted that they were in possession. The ruling of the court that the bank was in possession under the admitted facts

was correct. Its position was much stronger than that of a mortgagee before judgment of foreclosure, of whose rights we have said, "If a mortgagee, having the right of possession, can peaceably occupy the premises and is permitted peaceably to retain them, he may do so without bringing any action." *Hartford Realization Co.* v. *Travelers Ins. Co.*, 117 Conn. 218, 224, 167 Atl. 728. This case impliedly overruled the contrary statement in *Cion* v. *Schupack*, 102 Conn. 644, 649, 129 Atl. 854, relied on by the plaintiff. Here the property had been vacant for nearly a year before the redemption by the bank. It had the right to enter and take possession for the purpose of protecting the property to which it had title.

One ruling on evidence is made a ground of error. A witness was inquired of as to the character of the plaintiff and the question was excluded. The reputation of a plaintiff is a proper consideration on the question of damages and if the question had been worded in that way it should have been allowed. The reputation of a plaintiff was found relevant on the question of damages in *Zitkov* v. *Zaleski*, 102 Conn. 439, 444, 128 Atl. 779, and this conclusion of the trial court was upheld on appeal, express malice being found. 38 C. J. 449.

There is error and a new trial is ordered.

In this opinion the other judges concurred.